# IN THE SUPREME COURT OF IOWA

No. 08–1540

Filed October 1, 2010

**ODELL EVERETT, JR.,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Richard D. Stochl, Judge.

State seeks further review of a court of appeals' decision reversing the district court decision denying the defendant's postconviction relief action and granting the defendant a new trial. **DECISION OF COURT OF APPEALS VACATED; DECISION OF DISTRICT COURT AFFIRMED.**

Nathan A. Mundy of Bartolomei & Lange, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kevin R. Cmelik, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kimberly A. Griffith, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

The State seeks further review of a court of appeals' decision reversing the district court's denial of the defendant's application for postconviction relief and ordering a new trial for the defendant. The State contends the court of appeals erred in finding the defendant's claim that failure to obtain his presence when responding to a jury question required the defendant to receive a new trial. Because we conclude the defendant's claim must be brought as a claim of ineffective assistance of counsel and under such an analysis he failed to establish prejudice, we vacate the decision of the court of appeals and affirm the trial court's denial of the defendant's postconviction relief claim.

## I. Background Facts and Proceedings.

From the evidence presented at trial, a jury could have found the following facts. On November 11, 2003, a black male wearing a green bandana over his face and a stocking cap on his head held up a Waterloo convenience store. The man held a knife to one employee and demanded the cash register drawer before fleeing on foot. A short time later, a police officer in the vicinity observed the defendant, Odell Everett, exit a car after the officer shined a spotlight on the vehicle. A lengthy foot chase with police ensued. During the chase, an officer was able to grab one of the defendant's pants pockets, spilling its contents. The defendant was apprehended shortly thereafter.

Upon retracing the chase route, police officers recovered cash and food stamps that had spilled from the defendant's pocket, a black stocking cap, and the cash register drawer. A green bandana and a significant number of coins were recovered from the defendant's pockets. In the vehicle exited by the defendant, officers recovered a blue jacket,

which fit the witnesses' description of an item of clothing worn by the robber.

At trial, two store employees identified the defendant as the robber. One employee testified that at one point during the robbery the defendant stood behind her with a knife to the right side of her back. She described the knife as having a blade three to four inches long with a hook on the end. She also observed the defendant waving the knife around. A second employee testified she did not actually see the knife because the defendant had his hands in his pockets when she observed him. But, she testified, "he was wielding [his hand] like there was a knife," giving her the impression he had a weapon.

During deliberations, the jury sent this question to the court: "Is it first degree robbery if the defendant represents that he has a dangerous weapon, but does not actually have or show it?" After conferring with defense counsel and the prosecutor, the court sent the following written response back to the jury: "Please reread the instructions." The defendant was not notified of the question and was not present when the court and counsel conferred. Everett was subsequently convicted of first-degree robbery for which he received a twenty-five-year indeterminate sentence.[1]

On direct appeal, the defendant claimed there was insufficient evidence to support his conviction for first-degree robbery and his trial counsel was ineffective for failing to offer expert witness testimony on the subject of eyewitness identification. The court of appeals rejected both claims and affirmed the defendant's conviction.

---

[1]Everett was also convicted of interference with official acts for which he received a thirty-day sentence. Everett only appealed his first-degree robbery conviction.

In March 2006 the defendant filed this application for postconviction relief. In his initial application, the defendant alleged trial counsel was ineffective for, among other things, "failing to confer with Everett regarding [a] jury [question]." He subsequently amended his application "to allege one claim" stated as follows:

> Reversible error occurred when the Court, Defense counsel, and Prosecutor in any combination failed to notify Petitioner of the jury question, request Petitioner's presence be had before the Court or that he waive such presence and failing to comply with any of the procedures enumerated in Iowa Rule [of] Criminal Procedure 2.27(1) . . . and 2.19(5)(g) . . . resulting in prejudice to the Petitioner resulting in violations of the 14th and 6th Amendment[s] to the United States [C]onstitution and the [C]onstitution of the State of Iowa . . . .

At the hearing on the defendant's application, trial counsel admitted he did not request the defendant's presence when asked by the court if the defendant's presence was needed. After hearing the jury question, counsel determined "it was a legal question [and] there was no advice Mr. Everett could give me on that [that] I would have needed." Defense counsel further testified he believed the instructions adequately described the law and he did not want to risk a change in the instruction which potentially would not benefit his client. He asserted his actions constituted deliberate trial strategy. The defendant also testified at the hearing. He stated that if he had been present and advised of the question, he would have asked his attorney "to tell the jury to look at the instructions, not just First Degree Robbery."

The district court held the defendant had a Sixth Amendment right, implemented by our rules of criminal procedure, to be present during the process of responding to the jury's request for further instruction. Absent waiver, there is a presumption of prejudice which

would require reversal unless the record affirmatively shows the court's instruction had no influence on the jury's verdict prejudicial to the defendant. *See State v. Snyder*, 223 N.W.2d 217, 221–22 (Iowa 1974).

The court held defense counsel did not have the right to waive the defendant's presence. The court found, however, the record affirmatively established the trial court's instruction had no prejudicial influence on the jury's verdict because the evidence against the defendant was overwhelming. Furthermore, the court concluded the instruction defining first-degree robbery clearly set forth the law and the answer to the jury's question was easily ascertained from those instructions. Therefore, the defendant's application for postconviction relief was denied.

## II. Appellate Review.

The defendant appealed. He acknowledged a claim not properly raised on direct appeal may not be litigated in a postconviction relief action unless sufficient cause is shown for not previously raising the claim and actual prejudice resulted from the claim of error. However, the defendant contended sufficient cause for not raising this claim on direct appeal was established because he was unaware the jury had posed a question until he received a copy of the trial transcript, after his direct appeal was concluded. The State refuted the defendant's argument that there was sufficient reason error was not preserved on this claim and maintained the proper vehicle to have brought the claim is through an ineffective-assistance-of-counsel claim. The State argued the failure to raise and frame the issue is significant because of the difference in the prejudice prongs of the applicable tests.

A divided panel of the court of appeals reversed the district court's decision. The majority found Everett's claim to have been unaware of the

judge-jury communication until after the direct appeal constituted sufficient reason for not having raised the claim on direct appeal.

Having determined the defendant established sufficient reason for not raising this issue on direct appeal, the majority considered the merits of the defendant's claim. The appellate court concluded the court's instruction to reread the jury instructions provided no remedy to the jury's confusion regarding a point of law. Therefore, it was likely the jury's confusion influenced the verdict. The court of appeals reversed the district court, holding Everett was entitled to a new trial. Notably, the court of appeals analyzed the issue using the framework for evaluating a claim of trial court error rather than using the standards for an ineffective-assistance-of-counsel claim. We granted further review.

### III. Standard of Review.

"The standard of review on appeal from the denial of postconviction relief is for errors at law." *McLaughlin v. State*, 533 N.W.2d 546, 547 (Iowa 1995). However, "[w]hen there is an alleged denial of constitutional rights, . . . we make our own evaluation of the totality of the circumstances in a de novo review." *Id.*

### IV. Relevant Rules of Procedure.

Iowa Rule of Criminal Procedure 2.27(1) provides that "[i]n felony cases the defendant shall be . . . personally present at every stage of the trial." We have held that this rule applies to the giving of additional instructions by the court and that the defendant's "absence gives rise to a presumption of prejudice necessitating reversal unless the record affirmatively shows the instruction had no influence on the jury's verdict prejudicial to the defendant." *Snyder*, 223 N.W.2d at 221–22. This right, however, can be waived, as noted in Iowa Rule of Criminal Procedure 2.19(5)(*g*) which provides:

> After the jury has retired for deliberation, if there be any disagreement as to any part of the testimony, or if it desires to be informed on any point of law arising in the cause, it must require the officer to conduct it into court, and, upon its being brought in, the information required may be given, in the discretion of the trial court. . . . Where the court gives the jury additional instructions, this shall appear of record. The procedure described shall take place in the presence of defendant and counsel for the defense and prosecution, unless such presence is waived.

Thus, "the trial court has discretion whether, and to what extent, a jury inquiry should be answered; but it has no discretion in deciding whether defendant and counsel need to be present." *State v. Griffin*, 323 N.W.2d 198, 201 (Iowa 1982); *accord McLaughlin*, 533 N.W.2d at 548.

**V. Error Preservation.**

**A. Argument.** The State contends the defendant has failed to preserve error on this claim because (1) he did not raise it on direct appeal and (2) he has not raised it as an ineffective-assistance-of-counsel—either trial or appellate—claim. The defendant, on the other hand, asserts sufficient cause has been established for his failure to raise this issue on direct appeal. *See Berryhill v. State*, 603 N.W.2d 243, 245 (Iowa 1999) (holding factual or legal matters which were excusably unknown at the time of the trial and appeal may be properly asserted on postconviction relief). He agrees, however, that he has not raised an ineffective-assistance-of-counsel claim.

**B. Guiding Principles.** Before addressing the error preservation argument, it is helpful to set forth the guiding principles concerning postconviction relief. We have long held that postconviction relief proceedings "are not an alternative means for litigating issues that were or should have been properly presented for review on direct appeal." *Id.*; *see also* Iowa Code § 822.2(2) (2007) (postconviction relief "is not a substitute for . . . any remedy, incident to the proceedings in the trial

court, or of direct review of the sentence or conviction"). "Thus, we have consistently held that any claim not properly raised on direct appeal may not be litigated in a postconviction relief action unless sufficient reason or cause is shown for not previously raising the claim, and actual prejudice resulted from the claim of error." *Berryhill*, 603 N.W.2d at 245.

Ineffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules. *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006); *see also State v. Lucas*, 323 N.W.2d 228, 232 (Iowa 1982) (noting that, because realistically, these claims are not made by attorneys against their own actions, we have allowed these claims to be brought in a postconviction relief action). More recently, the Iowa legislature has provided that an ineffective-assistance-of-counsel claim "need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes." Iowa Code § 814.7(1) (2007); *see also State v. Johnson*, 784 N.W.2d 192, 197 (Iowa 2010).

**C. Analysis.** Normally, objections to the giving of jury instructions are waived on direct appeal if not raised before counsel's closing argument. *See State v. Fountain*, 786 N.W.2d 260, 262 (Iowa 2010) (citing Iowa R. Civ. P. 1.924); *see also* Iowa R. Crim. P. 2.19(5)(*f*) ("The rules relating to the instruction of juries in civil cases shall apply to the trial of a criminal case."); *State v. Shanahan*, 712 N.W.2d 121, 141 (Iowa 2006) (same). However, "[w]hile the jury is deliberating, the court may in its discretion further instruct the jury, in the presence of or after notice to counsel. . . . [A]ny objections thereto shall be made in a motion for a new trial." Iowa R. Civ. P. 1.925; *see also State v. McKee*, 312 N.W.2d 907, 915 (Iowa 1981) (when jury directed question to judge asking for a definition and the court gave an additional instruction

concerning a vital issue in the case, "defendant was obliged to complain of the instruction by motion for new trial or satisfactorily explain his failure to do so").

The court of appeals did not discuss the defendant's failure to file a motion for a new trial. Instead, it concluded that because Everett was unaware of the jury's question until after the resolution of his direct appeal, sufficient reason or cause had been shown for not previously raising the claim on direct appeal. The court of appeals allowed the defendant to argue his claim as though he had preserved error. It also allowed him to assert, absent an affirmative showing in the record that the instruction had no influence on the jury's verdict prejudicial to him, that reversal was warranted.

The State, however, maintains this claim should have been brought as a claim of ineffective assistance of counsel. It also argues the court of appeals erred in treating the defendant and his lawyer as separate entities. Specifically, the State asserts what was known to the lawyer—that the jury had posed a question—was imputed to the defendant, and thus, having failed to file a motion for new trial, the defendant's only recourse was to raise an ineffective-assistance-of-counsel claim. The State's argument has merit.

In *State v. Ball*, 600 N.W.2d 602, 603 (Iowa 1999), defense counsel learned, for the first time during the cross-examination of the arresting officer, his client had requested an attorney prior to his subsequent making of incriminating statements. Defense counsel moved to suppress the incriminating statements. The prosecution resisted, contending the motion was untimely and thus waived, and the defendant had not shown good cause to grant relief from the waiver. *Ball*, 600 N.W.2d at 604. We agreed, imputing knowledge known to the defendant to his counsel and

refusing to treat defense counsel and defendant as two separate entities for the purpose of establishing good cause for failure to file a timely motion to suppress. *Id.* at 605–06.

The same logic applies here. Trial counsel was obviously aware his client was not present during the presentation and discussion of the jury question. In fact, counsel chose not to have the defendant present. Thereafter, no motion for new trial was filed as required by the rules of procedure. It is undisputed counsel was acting on behalf of his client.[2] To the extent the defendant asserts counsel's actions were improper and prejudice resulted, such claims must be brought as ineffective-assistance-of-counsel claims.[3] *See State v. Feregrino*, 756 N.W.2d 700, 706–07 (Iowa 2008) (reviewing counsel's waiver of jury trial under ineffective-assistance-of-counsel standard). We conclude the defendant's

---

[2]Because defense counsel was present and implicitly waived his client's presence, we have no occasion to consider this issue under a claim of trial court error. *See State v. Williams*, 341 N.W.2d 748, 751–52 (Iowa 1983) (where it was unclear from the record whether defendant or counsel were advised of jury question, on direct appeal, court held error not preserved but concluded any error was harmless beyond a reasonable doubt because the communication was not an instruction on the law and had no bearing on what evidence the jurors were to consider); *State v. McKee*, 312 N.W.2d 907, 914–15 (1981) (same).

[3]In fact, a close reading of the transcript of the hearing before the district court in this case confirms that, irrespective of the analysis applied by the district court and the defendant's current claim, both the prosecution and the defense believed the defendant's claim was one of ineffective assistance of counsel. In argument to the district court that the defendant had waived the attorney-client privilege, the prosecutor stated:

> When you file a [postconviction relief] and you're claiming ineffective assistance of trial counsel because trial counsel didn't bring you over or notify you of a jury question, you have effectively waived the attorney-client privilege.

Likewise, in his direct examination of his client, postconviction-relief counsel stated:

> It's—what's being reviewed today is whether or not the trial of your case, either ineffective assistance of counsel or some error that requires the Court grant your application for post-conviction relief. Do you understand that?

claim must be addressed as one of ineffective assistance of counsel despite his protestations to the contrary.

### VI. Ineffective Assistance of Counsel.

**A. Guiding Principles.** Our analysis of an ineffective-assistance claim is de novo. To succeed on an ineffective-assistance-of-counsel claim, a defendant must show: "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). "[W]e measure counsel's performance against the standard of a reasonably competent practitioner." *Id.* (citing *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001)). In determining whether an attorney failed in performance of an essential duty, we avoid second-guessing reasonable trial strategy. *Fullenwider v. State*, 674 N.W.2d 73, 75 (Iowa 2004); *see also Kane v. State*, 436 N.W.2d 624, 627 (Iowa 1989) ("Improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance of counsel.").

"To establish prejudice, a defendant must show the probability of a different result is 'sufficient to undermine confidence in the outcome.'" *State v. Reynolds*, 746 N.W.2d 837, 845 (Iowa 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984)). "In determining whether this standard has been met, we must consider the totality of the evidence, what factual findings would have been affected by counsel's errors, and whether the effect was pervasive or isolated and trivial." *State v. Graves*, 668 N.W.2d 860, 882–83 (Iowa 2003) (citing *Strickland*, 466 U.S. at 695–96, 104 S. Ct. at 2069, 80 L. Ed. 2d at 698). "Unlike the situation in which error has been preserved and the court presumes prejudice, in this case it is the

defendant's burden to demonstrate a reasonable probability of a different result." *Reynolds*, 746 N.W.2d at 845 (citation omitted).

**B. Performance of an Essential Duty.** As previously noted, Iowa Rule of Criminal Procedure 2.19(5)(*g*) provides that "the trial court has discretion whether, and to what extent, a jury inquiry [on a factual dispute or any point of law arising in the case] should be answered." *Griffin*, 323 N.W.2d at 201. The court, however, "has no discretion in deciding whether [the] defendant and counsel need be present." *Id.* The determination of whether to give additional information and the giving of additional information "shall take place *in the presence of defendant* and counsel for the defense and prosecution, *unless such presence is waived.*" Iowa R. Crim. P. 2.19(5)(*g*) (emphasis added); *see also State v. Williams*, 341 N.W.2d 748, 751 (Iowa 1983) ("Our recent cases hold that all communications between court and jury are required to be given in the presence of the defendant and counsel."). In this case, counsel testified that he did not have permission to waive Everett's presence. The question, then, is whether counsel's failure to ensure his client's presence or obtain his client's waiver constituted a failure to perform an essential duty.

We have not found a case where we have expressly held counsel's failure to ensure his client's presence or obtain his waiver to participate in the response to a jury question constitutes a failure to perform an essential duty. In his testimony, trial counsel stated his handling of the jury question involved trial strategy. Specifically, counsel considered the jury's inquiry to be a legal question, his client had previously left all legal determinations to him, and there was nothing his client was going to say that would have changed his mind that the best strategy was to allow the court to instruct the jury to reread the instructions.

The rationale for the requirement that a defendant be present under such circumstances has been stated as follows:

> The presence of the accused may be, and certainly is, essential to the ends of justice in the trial of all criminal offenses when his life or liberty is involved. When instructions are given by the court, or when the jury, returning from their room, desire to be further instructed, the presence of the accused is of the greatest importance, as he may be able to suggest to the court or his counsel some information that would throw additional light on his defense. He should also be present that he may except to the ruling of the court.

*Snyder*, 223 N.W.2d at 221 (quoting *Meece v. Commonwealth*, 78 Ky. 586, 592 (1880)). We have also held a defendant's right to be present for the giving of additional instructions under the rules of criminal procedure is derived from the Sixth Amendment. *See McKee*, 312 N.W.2d at 914–15.

We conclude counsel had a duty in this instance to ensure his client's statutory and constitutional rights were protected. Moreover, we find in counsel's testimony, no justification for his failure to do so in this case. *See State v. Bearse*, 748 N.W.2d 211, 217 (Iowa 2008) (holding where defense counsel had a duty to object to a breached plea agreement and no possible advantage could flow from counsel's failure to object, counsel's failure cannot be attributed to improvident trial strategy or misguided tactics). Even if the defendant's presence and input had no effect on the court's response to the jury question, his presence would have, at minimum, provided him with the opportunity to confer with his counsel and to object to the court's ruling.

Nevertheless, because we can resolve this issue on the prejudice prong, we need not determine whether the failure to ensure a defendant's presence during consideration of a jury question would always constitute

a breach of an essential duty. *See Kirchner v. State*, 756 N.W.2d 202, 204 (Iowa 2008) (" 'The court need not address both components if the [applicant] makes an insufficient showing on one of the prongs.' " (quoting *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995))). However, as implied from our discussion and prior case law, the better practice is for counsel to always obtain the client's presence or for the court to obtain an express waiver of the defendant's presence.

**C. Prejudice.** The jury's question indicated that it was confused about the elements of first-degree robbery, specifically whether the defendant had to actually possess a dangerous weapon or whether it is sufficient that he represented that he did. Under an ineffective-assistance-of-counsel claim, the defendant must show that had he been advised of the jury's question and allowed to participate in the determination of a response, there was a reasonable probability of a different outcome. In this case, a different outcome would include a conviction of an offense less than first-degree robbery.[4] A review of the record reveals the defendant has not shown a reasonable probability that the outcome would have been different.

In his own testimony, the defendant asserted that had he been advised of the jury's question, he would have asked his attorney "to tell the jury to look at the instructions, not just First Degree Robbery." This is exactly what the trial court did when it instructed the jury to reread the instructions. Moreover, the instruction on first-degree robbery provided that in order to find the defendant guilty of first-degree robbery the jury must find "[t]he defendant was *armed* with a dangerous

---

[4]This requirement places the burden on the defendant to show a reasonable probability of a different outcome in comparison to the presumption of prejudice standard applied by the court of appeals, requiring the State to affirmatively show the district court's actions did not have a prejudicial influence.

weapon."[5]  (Emphasis added.)   The ordinary definition of "armed" is easily comprehended as meaning equipped with a weapon.  *See Webster's Third New International Dictionary* 119 (2002) (defining "armed" as "furnished with weapons of offense or defense . . . EQUIPPED"). Merely representing that one had a weapon would not satisfy the "armed" element of first-degree robbery.  Thus, the court's response to the jury to reread the instructions, which included a correct statement of the law on first-degree robbery, was an appropriate response and would not have resulted in confusion prejudicial to the defendant.

As the State notes, counsel might have suggested that the question be answered "to be convicted of robbery in [the] first degree the defendant must *actually* be armed, that is, possess a weapon."  While this is also a correct statement of the law, the defendant has failed to establish a reasonable probability, in light of all of the evidence, that had this additional instruction been given, the outcome would have been different because there was undisputed evidence the defendant possessed a weapon.

---

[5]The jury was given the following instruction in regards to first-degree robbery:

The State must prove all the following elements of Robbery in the First Degree:

1.   On or about the 11th day of November, 2003, the defendant had the specific intent to commit a theft.

2.   To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant

a. committed an assault . . . , or

b. threatened Rysa Rice or Dawn Carlson, or both of them, with immediate serious injury, or purposely put Rysa Rice or Dawn Carlson, or both of them, in fear of immediate serious injury.

3.   The defendant was armed with a dangerous weapon.

If the State has proved all of the elements, the defendant is guilty of Robbery In The First Degree. . . .

Rysa Rice, one of two employees working that night, testified the defendant approached her in a back room and stuck a knife into her side. He ordered her to open the cash drawer while waiving the knife in front of her. Rice was able to provide a description of the knife, stating it had a three- to four-inch silver blade with a hooked end. The other employee, Dawn Carlson, testified that when she went to investigate Rice's scream, the defendant grabbed her by the hair and pushed her toward a counter. Although she did not see a weapon, she testified that Everett had his hands in his pockets and was gesturing like he had a knife. Carlson's testimony supports Rice's testimony that Everett was armed with a knife. Because there is undisputed evidence the defendant possessed a weapon, the defendant has not shown that, had he been advised of and consulted about the jury's question, a different response would have been sent to the jury which would have resulted in a reasonable probability the outcome would have been different.

**VII. Conclusion.**

The defendant cannot establish his trial counsel provided ineffective assistance of counsel because he has failed to establish a reasonable probability exists that had he been advised of the jury's question, the outcome of his trial would have been different. We therefore vacate the decision of the court of appeals and affirm the decision of the district court denying the defendant's application for postconviction relief.

**DECISION OF COURT OF APPEALS VACATED; DECISION OF DISTRICT COURT AFFIRMED.**